UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| WILLIE FRED GREEN SR., ET AL | CIVIL ACTION NO. 20-601 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| KEVIN STRICKLAND, ET AL | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

In the instant case, seventeen plaintiffs have brought a civil rights suit against twenty-one officers from the Shreveport Police Department ("SPD"), along with the City of Shreveport. Before the Court is a motion to dismiss, filed by the Defendants, in which they seek dismissal of most, but not all, of Plaintiffs' claims against them. Record Document 28. For the reasons set forth below, the Defendants' motion is granted in part and denied in part.

### BACKGROUND

To start, the Court observes that while the genesis of the dispute here can be summarized fairly easily, the specific allegations lodged by each Plaintiff against a particular Defendant prove to be more elusive. For purposes of this motion, the Court will accept all well-pleaded facts as true and construe the allegations in the light most favorable to the Plaintiffs.

On May 19, 2019, the Plaintiffs were gathered at the home of Plaintiffs Willie Green and Viola Green in Shreveport, Louisiana for a Mother's Day celebration. Record Document 23, p. 10. In the afternoon, a disturbance broke out at a home across the street (the "Thomas" residence), and SPD officers responded. Id. SPD Officers Holmes and Mosby,

1

both of whom are Defendants in this matter, arrived on the scene first. Id. Plaintiff Javon Tyler, an off-duty SPD officer who was at the Green residence, walked across the street with Willie Green to try to settle the situation. Id. at 11. While the dispute at the Thomas residence was resolved peacefully, the Plaintiffs characterize Holmes's and Mosby's demeanors on scene as "blaise [sic] and lackadaisical" because they allegedly did not want to work a domestic dispute on Mother's Day. Id.

Later that day, another disturbance erupted at the Thomas residence. Id. During that dispute, Plaintiff Tyler confronted an individual wielding a crowbar.[1] Id. Defendant Mosby returned to the scene, and Plaintiff Tyler informed her that the individual with the crowbar should be arrested. Id. Plaintiffs allege that Mosby instead threatened to arrest Plaintiff Tyler, whom she knew was a police officer within her organization. Id. at 12. Some individuals from the Thomas residence defended Plaintiff Tyler, informing Defendant Mosby that he was not involved in their dispute, but she ignored them. Id.

Unfortunately, the complaint is unclear on the events that followed. Plaintiff Johnnie Young, also an off-duty SPD officer who was at the Green residence, somehow became involved in the situation with Defendant Mosby and Plaintiff Tyler. The complaint merely states that "Mosby unreasonably misinterpreted Tyler and Young's efforts to maintain peace in the neighborhood as being acts hostile toward her." Id. The Plaintiffs expressed their criticism of how Mosby handled the Thomas dispute the first time she responded, essentially stating that if the situation had been handled properly, a second

---

[1] According to the complaint, the person was armed with "a crow bar and/or a screwdriver." Id. at 12.

2

disturbance never would have happened. Id. Mosby became upset by the criticism, "was not watching her step and stepped back . . . and accidentally fell into a ditch." Id. Plaintiff Young assisted her back to her feet. Id. Defendant Mosby, however, believed someone had pushed her into the ditch. Id. at 13. Defendant Holmes then "panicked," perceived Plaintiffs Tyler and Young to be a threat, and called for emergency backup from other SPD officers. Id. Meanwhile, Defendant Mosby threatened Plaintiff Young with a taser. Id. Defendant Mosby called a "code black" over the radio to report she was under attack by a crowd. Id.

According to the Plaintiffs, approximately thirty SPD officers responded to the scene and what happened thereafter forms the basis of the instant lawsuit. The Defendants in this suit are those SPD officers who arrived on the scene and were present for or engaged in "crowd control." Some of those officers actually engaged with some of the Plaintiffs, while other Defendants who have been sued appear merely to have been present at the scene. Similarly, not all Plaintiffs were actually involved in any physical dispute with the Defendants—some were merely present at the scene and witnessed the events.

Seventeen Plaintiffs sued twenty-two Defendants in a wide-ranging complaint organized into nine groupings of causes of action: (1) false arrest, failure to intervene, and unreasonable detention; (2) excessive force and failure to intervene; (3) failure to supervise; (4) failure to intervene, aiding and abetting, acquiescence, active participation, and § 1983 conspiracy; (5) illegal entry, trespass, and destruction of property; (6) municipal liability and officer liability; (7) failure to provide medical attention; (8) state law claims of failure to intervene, false arrest, malicious prosecution, excessive force, negligent

retention, battery, assault, and negligent infliction of mental distress; and (9) retaliation, malicious prosecution, and intentional infliction of mental distress. Plaintiffs' federal claims are brought under 42 U.S.C. § 1983 for violations of their Fourth and Fourteenth Amendment rights. Record Document 23, p. 1. Plaintiffs invoke the Court's supplemental jurisdiction for their state law claims.

In response to the Plaintiffs' second amended complaint, the Defendants filed the instant motion to dismiss. In this motion, they seek to dismiss most of the Plaintiffs' claims, with the exception of the following: Plaintiff Antoine Hardeman's excessive force claims; Plaintiff Torell Lewis's excessive force claims; Plaintiff Tyler's excessive force claims; Plaintiff Hardeman's failure to intervene claim against Defendant Sergeant Strickland; and the Plaintiffs' ninth cause of action, which is Plaintiff Tyler's and Plaintiff Young's retaliation, malicious prosecution, and intentional infliction of mental distress claims. These claims will not be addressed in this opinion.

## **LEGAL STANDARD**

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 663. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. The court must accept as true all of the factual allegations in the complaint in determining whether plaintiff has stated a plausible claim. See Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 555 (2007); In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2009). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). If a complaint cannot meet this standard, it may be dismissed for failure to state a claim upon which relief can be granted. Iqbal, 556 U.S. at 678-79. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether plaintiff has pleaded a legally cognizable claim. United States ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 376 (5th Cir. 2004). A dismissal under 12(b)(6) ends the case "at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558.

## LAW AND ANALYSIS

I.  Qualified Immunity.

Defendants raise the defense of qualified immunity in response to Plaintiffs' § 1983 claims. Section 1983 provides a federal cause of action for the "deprivation of any rights, privileges or immunities secured by the Constitution and laws" against any person acting under color of state law. 42 U.S.C. § 1983. Section 1983 does not itself create substantive rights; rather, it merely provides remedies of rights guaranteed to citizens by the United States Constitution or other federal laws. See Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1871 (1989); City of Oklahoma City v. Tuttle, 471 U.S. 808, 816, 105 S. Ct. 2427, 2432 (1985). The doctrine of qualified immunity shields government officials from liability for claims against them in their individual capacity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727

(1982). Qualified immunity serves to shield government officials from harassment, distraction, and liability when they perform their duties reasonably, and it applies regardless of whether the official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (quoting Groh v. Ramirez, 540 U.S. 551, 567, 124 S. Ct. 1284 (2004) (Kennedy, J., dissenting)). A § 1983 complaint must allege that the constitutional or statutory deprivation was intentional or due to deliberate indifference and not the result of mere negligence. Farmer v. Brennan, 511 U.S. 825 (1994); Daniels v. Williams, 474 U.S. 327, 332 (1986).

Because qualified immunity is "an immunity from suit rather than a mere defense to liability, . . . it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806 (1985). Consequently, qualified immunity questions should be resolved at the earliest possible stage in litigation. See Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534 (1991) (per curiam). While qualified immunity is technically an affirmative defense, once it has been raised, it is the plaintiff's burden to negate the defense. Poole v. City of Shreveport, 691 F.3d 624, 627 (5th Cir. 2012).

In Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001), the Supreme Court held that a court ruling upon the issue of qualified immunity must apply a two-step analysis. First, the court must determine whether "the facts alleged show the officer's conduct violated a constitutional right." Id. Second, if a violation has been established, the court must determine whether the officer's actions were objectively reasonable in light of clearly established law at the time of the conduct in question. See id.; Freeman v.

6

Gore, 483 F.3d 404, 411 (5th Cir. 2007). The court may evaluate these steps in whichever order it so chooses.[2] "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." Goodson v. Corpus Christi, 202 F.3d 730, 736 (5th Cir. 2000). If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact. See Tarver v. City of Edna, 410 F.3d 745, 750 (5th Cir. 2005) (citing Malley v. Briggs, 475 U.S. 335, 343, 106 S. Ct. 1092 (1986) (holding the qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law.")) The question of whether an official's conduct was objectively reasonable is a question of law to be decided by the court. See Evett v. DETNTFF, 330 F.3d 681, 688 (5th Cir. 2003) (citing Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994)).

To be clearly established, a legal principle must be found in the holdings of either "controlling authority" or a "robust 'consensus of cases of persuasive authority,'" Ashcroft v. al-Kidd, 563 U.S. 731, 741–42, 131 S. Ct. 2074 (2011) (quoting Wilson v. Layne, 526 U.S. 603, 617, 119 S. Ct. 1692 (1999)), and defined with a "high 'degree of specificity,'" District of Columbia v. Wesby, —U.S.—, 138 S. Ct. 577, 590 (2018) (quoting Mullenix v.

---

[2] In Pearson, the Supreme Court held that while the sequence set forth in Saucier is often appropriate, it is no longer mandatory. Pearson, 555 U.S. at 236. Instead, lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id.

Luna, 577 U.S. 7, 13, 136 S. Ct. 305, 309 (2015) (per curiam)). It is not that a case must be directly on point, but rather existing precedent must have provided sufficient notice that the acts violate the Constitution. See Darden v. City of Fort Worth, 880 F.3d 722, 727 (5th Cir. 2018). The "clearly established" test ensures that officials have "fair warning" that particular conduct violates the Constitution. Anderson v. Valdez, 845 F.3d 580, 600 (5th Cir. 2016) (quoting Kinney v. Weaver, 367 F.3d 337, 350 (5th Cir. 2004) (en banc)).

II.  Insufficient Pleading.

Without addressing each of the arguments raised in the Defendants' motion to dismiss, the Court notes that the Plaintiffs' claims against the Defendants are deficient in a number of respects. First, oftentimes, the Plaintiffs' complaint does not clearly identify the nature of the claims or the source of the right each specific Plaintiff asserts against a specific Defendant. Further, it often lacks a factual basis for those claims. Compounding this issue is that groups of Plaintiffs and groups of Defendants are frequently lumped together, making it impossible to discern who allegedly did what to whom within the context of a particular claim. See Cain v. City of New Orleans, No. CV 15-4479, 2016 WL 2849498, at *5 (E.D. La. May 13, 2016) ("This pleading structure—lumping all defendants together and asserting identical allegations as to each, without distinction—largely prevents the Court from discerning which defendants are allegedly responsible for which allegedly unlawful actions."). While this would be problematic in any § 1983 complaint, the error is particularly significant here where the Court is required to analyze the nine "categories" of claims (which themselves contain subsets of claims) brought by seventeen Plaintiffs against twenty-two Defendants. The Court's task is all but impossible given the

current state of pleading, and this predicament is heightened by the internal inconsistencies contained within the second amended complaint. Further, many of the allegations supporting the Plaintiffs' claims are conclusory. In sum, the majority of the Plaintiffs' allegations do not provide fair notice of each individual claim asserted by each Plaintiff against a particular Defendant, nor does it provide notice of the factual underpinnings for those claims.

Second, the Plaintiffs routinely assert claims against an entire group of unidentified Defendants, i.e., "all defendant police officers seized and/or detained all Plaintiffs as a whole and/or a crowd," "some officers . . . used force," and "the failure to intervene and acquiescence by each named defendant resulted in the named defendants failing to follow protocol and training." Record Document 23, pp. 25 & 29. However, legal liability is "personal." Bank of Am., N.A. v. Knight, 725 F.3d 815, 818 (7th Cir. 2013). An allegation that *someone* did something unlawful "does not propound a plausible contention that *a particular person* did anything wrong." Id. The notice pleading required by the Federal Rules of Civil Procedure entitles each defendant "to know what he or she did that is asserted to be wrongful." Id. Thus, "a plaintiff bringing a section 1983 action must specify the personal involvement of each defendant." Murphy v. Kellar, 950 F.2d 290, 292 (5th Cir. 1992). Courts have often concluded that allegations that plead liability with respect to a collective group of defendants without distinguishing the conduct of each individual defendant are deficient. See Cain, 2016 WL at *5. While such collective allegations of liability are not always a fatal pleading deficiency, the Fifth Circuit has cautioned that "each defendant is [still] entitled to know what he or she did that is asserted to be wrongful."

9

Martinez v. City of N. Richland Hills, 846 F. App'x 238, 243 (5th Cir. 2021) (internal marks omitted). Here, the second amended complaint fails to inform the Defendants which members of their group are named as wrongdoers for each claim.

Third, the Plaintiffs' method of group pleading precludes the Court from meaningfully assessing the Defendants' qualified immunity defense. "Where officers work together to effectuate an arrest, federal district courts frequently analyze false arrest claims, including assertions of qualified immunity, concurrently as to all arresting officers." Sinegal v. City of El Paso, 414 F. Supp. 3d 995, 1004 (W.D. Tex. 2019) (collecting cases). But, "[i]n cases where the defendants have not acted in unison, 'qualified immunity claims should be addressed separately for each individual defendant.' " Darden, 880 F.3d at 731 (quoting Kitchen v. Dallas Cnty., 759 F.3d 468, 480 (5th Cir. 2014)). Moreover, when the qualified immunity defense has been raised, "a plaintiff cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions, at least when those facts are known to the plaintiff and are not peculiarly within the knowledge of defendants." Schultea v. Wood, 47 F.3d 1427, 1432 (5th Cir. 1995). Thus, as courts have concluded, when plaintiffs fail to individualize their allegations against the defendants without justification for doing so, and instead rely on "collective allegations" against a whole group of defendants, they fail to overcome assertions of qualified immunity at the 12(b)(6) stage. See Sinegal, 414 F. Supp. 3d at 1004; Bivens v. Forrest Cnty. No. 2:13-CV-8-KS-MTP, 2015 WL 1457529, at *7 (S.D. Miss. Mar. 30, 2015).

The exception to this is when a plaintiff affirmatively alleges that he is unable to specify which officer violated his constitutional rights; there, district courts within the Fifth

Circuit have allowed limited discovery "narrowly tailored to uncover only those facts needed to rule on the immunity claim[s]." Khansari v. City of Houston, 14 F. Supp. 3d 842, 861 (S.D. Tex. 2014) (quoting Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir. 2012)); see Delacruz v. City of Port Arthur, No. 1:18-cv-11, 2019 WL 1211843, at *6 (E.D. Tex. Mar. 14, 2019); Dyer v. City of Mesquite, No. 3:15-cv-2638-B, 2017 WL 118811, at *11 (N.D. Tex. Jan. 12, 2017); Crisp v. Dutton, No. A-15-cv-0431-LY-ML, 2015 WL 7076483, at *9 (W.D. Tex. Nov. 12, 2015); Huff v. Refugio Cnty. Sherriff's Dept., No. 6:13-cv-32, 2013 WL 5574901, at *2 (S.D. Tex. Oct. 9, 2013); cf. Callaway v. City of Austin, No. 15-cv-103-SS, 2015 WL 4323174, *9 (W.D. Tex. July 14, 2015) ("The argument that a plaintiff has failed to state a claim for excessive force simply because the witness could not see which officer did what fails at the *summary judgment* stage.").

Here, however, the Plaintiffs have not alleged that they are unable to identify which role each Defendant played in the alleged violations. Despite the Defendants putting the Plaintiffs on notice that the second amended complaint's group pleading was problematic, Plaintiffs' opposition to the motion to dismiss did nothing to cure or justify that issue. It is the Plaintiffs' burden to allege particular facts that refute the qualified immunity defense. And, even outside of the qualified immunity context, it is their burden to set forth direct factual allegations that put each Defendant on notice of which specific claims have been asserted against him or her. The Plaintiffs have, quite simply, failed to carry their burden.

However, despite having amended the complaint twice now, it is not clear to the Court that the Plaintiffs have actually pled their "best case." Morin v. Caire, 77 F.3d 116, 121 (5th Cir. 1996). Thus, the Court will allow the Plaintiffs one final chance to amend.

The amended complaint must be organized in such a fashion as to clearly delineate each specific claim each Plaintiff brings against each Defendant, the facts of that claim, and the source of the right. Continued grouping of Plaintiffs and Defendants, as currently pled, will not be reviewed favorably. All Defendants involved in each specific alleged violation must be identified by name (unless Plaintiffs can justify their inability to presently identify a specific Defendant) and each Defendant's role must be particularized. Failure to comply with these parameters will expose the majority of the Plaintiffs' claims to dismissal, for the reasons discussed above.

III.  Areas in Which Amendment Is Not Permitted.

While the Court will allow the Plaintiffs to amend their complaint, that authorization is circumscribed in several ways. First and foremost, the amended complaint may not expand upon the pool of parties set forth in the second amended complaint, nor may it add any new legal claims by or against any present party. Put simply, the parties and the claims are what they are; the Plaintiffs are granted permission only to specify and particularize their current claims against the current Defendants, not to allege any new claims. The Plaintiffs' right to amend is further limited in the following respects.

A.  Dismissed Claims.

The Court dismisses the federal claims brought by the following Plaintiffs: Linda LeFall, Frances Allen, George Allen, and William Allen. As to LeFall, the complaint alleges only that "an officer grabbed [her] arms" and told her to be quiet. Record Document 23, pp. 23 & 34. She allegedly suffered a bruise, swelling, headaches, mental distress, flashbacks, and sleeplessness. Id. George Allen asserts that he was shoved against a

shed, which hurt his back and caused him to suffer from post-traumatic stress disorder. Id. at 23. LeFall's and George Allen's claims are even more vague and non-particularized than the bulk of Plaintiffs' claims, and despite having drafted the complaint three times, Plaintiffs never set forth any further detail—either factual or legal—about these alleged constitutional violations. Nor, for that matter, did the Plaintiffs attempt to save these claims from dismissal under § 1983 when opposing the pending motion to dismiss. In fact, the only mention of LeFall and George Allen in the Plaintiffs' opposition is in the section regarding the Plaintiffs' state law claims. Because the Plaintiffs have failed to state a plausible § 1983 claim, they cannot survive Defendants' motion to dismiss. Permission is not granted to reconstitute these claims in the amended complaint.

The Court also dismisses the federal claims of Frances Allen and William Allen. Frances Allen allegedly witnessed what happened to her husband, George, while William Allen was merely in an overall "zone of danger" and was distressed by what he witnessed. There is "no constitutional right to be free from witnessing . . . police action." Grandstaff v. Borger, 767 F.2d 161, 172 (5th Cir. 1985). "Bystander excessive force claims can only succeed when the officer directs the force toward the bystander—that is to say, when the bystander is not really a bystander." Harmon v. City of Arlington, Tex., 16 F.4th 1159, 1168 (5th Cir. 2021). Here, these Plaintiffs' claims are based solely upon witnessing events and thus fail to state a claim under § 1983. The Plaintiffs' amended complaint may not reurge these claims.

Similarly, the Court dismisses all § 1983 claims brought on behalf of the minor children, as those claims are premised solely upon witnessing the events of that day. No

allegation has been made that a minor has a stand-alone § 1983 claim against any Defendant based on something other than witnessing the officers' actions against the adult Plaintiffs. Because no constitutional violation occurs to one who witnesses police action, the minors' claims necessarily fail. Thus, the federal claims brought on behalf of W. Love, III (brought by Javon and Denise Tyler), S. Tyler (brought by Javon and Denise Tyler), N. Young (brought by Johnnie and Rosiland Young), B. Love (brought by Relisa Jackson), C. Young (brought by Relisa Jackson), C. Anderson (brought by Danelle McKnight), and S. Jackson (brought by Calvin Jackson) are dismissed. These claims may not be repleaded.

As to Plaintiff Brenda Walker, the Plaintiffs allege that "one or more" of the Defendants, possibly Officers McConnell, Clark, Berry, and/or Sauseda stomped or fell on her foot, causing a broken toe. Claims arising out of negligent acts do not give rise to relief under § 1983. In <u>Daniels v. Williams</u>, the United States Supreme Court explained:

> Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.

474 U.S. 327, 332, 106 S. Ct. 662, 665 (1986). Thus, to the extent Walker's § 1983 claim is premised on someone "falling" on her, <u>i.e.</u>, negligence on the part of one or more Defendants, there is no remedy for such a claim under § 1983, and the claim must be dismissed.

     B.    Dismissed Defendants.

The Court also dismisses all claims against Defendant Tyler Asher. The Plaintiffs have not alleged that Asher personally violated any named Plaintiff's rights, directed

14

another to violate rights, or failed to intervene to stop any particular violation of rights, much less to which Plaintiff those failures would have been related. Indeed, Plaintiffs merely allege that Asher was present at the scene and failed to intervene and acquiesced in the use of force and false arrests. Record Document 23, p. 29. Given the multitude of alleged violations that occurred that day, it is imperative that Plaintiffs more particularly describe in what alleged violation Tyler failed to intervene and in whose use of force he acquiesced. Despite having filed three complaints, Plaintiffs have never attempted to better delineate what they believe Asher's role was that day, nor have they connected him to any of the violations described in the complaint. There are no facts alleged to plausibly suggest that the Plaintiffs can establish a claim against Asher, or that they could overcome the qualified immunity defense. Instead, the Court is left with the impression that Asher was sued simply because he was present on the scene that day. That is, there is no actual allegation of personal involvement that is more than a conclusory "guilt by association" type allegation. The claims against Defendant Asher are dismissed.

The same can be said for Officer Rawls-Davis.[2] Plaintiffs allege no specifics as to Officer Rawls-Davis's role on the day of the incident. Officer Rawls-Davis is listed as being present on the scene, and Plaintiffs accuse this Defendant of failing to intervene and acquiescing in the use of force. They assert that "[h]e used excessive force upon multiple plaintiffs." Id. at p. 5. However, the only specific, non-conclusory factual allegation raised

---

[2] Defendants refer to Officer Davis as Officer Kay Rawls-Davis, whereas Plaintiffs refer to this officer merely as "Davis," with no first name ever set forth. The Court will refer to this officer as Rawls-Davis.

15

against Officer Rawls-Davis is under the fourth cause of action.[3] There, Plaintiffs contend that "Davis" failed to restrain Defendant Tucker when Tucker employed his K-9 against Plaintiff Hardeman. The Court notes that in other factual descriptions of this event, Rawls-Davis is not named as being present for it. But, out of an abundance of caution, the Court will allow the Plaintiffs to amend this one claim—Rawls-Davis's alleged failure to intervene in Defendant Tucker's battery of Plaintiff Hardeman. However, all other claims against Officer Rawls-Davis are dismissed.

    C.    Non-Parties

While Officers "Lifer" and "Richardson" were not named as Defendants in this matter, their names are mentioned in some of the facts set forth in the complaint. However, Plaintiffs' amended complaint shall not treat these officers as though they are Defendants. In other words, these two officers may be mentioned factually, but the Court denies permission to amend the complaint to add them as Defendants in this case.

Similarly, minors D. Armington and A. Jackson are mentioned in the complaint, but are not identified as named Plaintiffs. Nor, for that matter, has any Plaintiff brought suit on behalf of these minors. They may not be added as Plaintiffs in the amended complaint.

IV.    Conclusion.

For the foregoing reasons, the Defendants' motion to dismiss [Record Document 28] be and is hereby granted in part and denied in part. It is granted to the extent that the following claims are dismissed with prejudice: the federal claims of Plaintiffs Linda

---

[3] This assumes the complaint is in fact referencing Officer Rawls-Davis and not Captain Rene Davis; the complaint fails to distinguish between the two in this allegation.

LeFall, Frances Allen, George Allen, and William Allen; Walker's § 1983 claim to the extent it is premised upon negligence; all federal claims brought on behalf of the minors; all Plaintiffs' claims against Defendant Tyler Asher; and all Plaintiffs' claims against Defendant Officer Rawls-Davis except Plaintiff Hardeman's claim for failure to intervene in Defendant Tucker's battery. The Defendants' motion is denied in all other respects with the right to reurge upon the Plaintiffs' filing of an amended complaint. Plaintiffs' amended complaint must be filed by **April 29, 2022**.

**THUS DONE AND SIGNED** this 21st day of March, 2022.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE